**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**CHARLES WASSIL,
STEVEN RHODES,
JOSHUA BELCHER, and
QUENTON SHEFFIELD**

          **Plaintiffs,**

**v.**                                  **Case N0. 3:13-cv-06020**

**RONALD B. CASTO, Interim
Director of the Western Regional Jail,
MISTY BENNETT, Prime Care Medical
Inc. Admin., BRADLEY BYRD,
Aramark Food Service Director,**

          **Defendants.**


## PROPOSED FINDINGS AND RECOMMENDATIONS

On March 22, 2013, Charles Wassil, Steven Rhodes, Joshua Belcher, and Quenton Sheffield (collectively "Plaintiffs"), proceeding *pro se* and then incarcerated at the Western Regional Jail in Barboursville, West Virginia, filed a complaint pursuant to 42 U.S.C. § 1983 claiming unsanitary prison conditions and a lack of medical care. (ECF No. 1). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed Plaintiffs' allegations, the undersigned **FINDS** that the complaint fails to state a claim upon which relief may be granted. Therefore, the

undersigned **RECOMMENDS** that the presiding District Judge **DENY** the application of Plaintiff, Charles Wassil, to proceed *in forma pauperis* (ECF No. 4)*,* **DENY** his Motion for Appointment of Counsel, (ECF No. 8), **DENY** Plaintiffs' Motion to Amend the Complaint to substitute Larry Crawford as a defendant in place of Ronald Casto, (ECF No. 9), **DISMISS** the complaint, with prejudice, (ECF No. 1), and remove this matter from the docket of the Court.

## I.   <u>Relevant Facts</u>

Plaintiffs complain that on February 4, 2013, they were eating dinner at the Western Regional Jail when inmate, Charles Wassil, found a dead rodent in his mashed potatoes. Wassil showed the rodent to other inmates in the dining room, who were also eating from the same pot of mashed potatoes. He then notified a correctional officer, who removed the offending tray.

Two days later, Wassil met with defendant Ronald Casto, the Jail's Interim Director, and Mr. Henry Robinson, Jr., the Deputy Chief of Operations, to discuss a grievance filed by Wassil after the incident. They explained to Wassil that steps had been taken to eliminate the presence of rodents in the Jail and asked if that addressed Wassil's concerns. Wassil responded in the negative, explaining that he had eaten some of the tainted potatoes; therefore, he had twice requested a sick call to obtain blood work as a preventative measure, but the medical staff had refused him. At Mr. Casto's suggestion, Wassil made a third request for blood work, which was allegedly ignored by the Jail's medical unit. Wassil subsequently filed a grievance with defendant Misty Bennett, medical administrator for the Jail, but she failed to respond.

According to Wassil, in the days that followed, correctional officers at the Jail teased and mocked the inmates about the rodent in their potatoes. Although Wassil

2

pursued his grievances, he was informed that nothing further would be done, and his appeals to the Regional Jail Authority were denied. Requests by the other Plaintiffs for blood work to determine if they had been exposed to disease from the dead rodent were similarly disregarded. None of the inmates received prophylactic care. Plaintiffs complain that the food service at the Jail did not improve even after the rodent incident. They allege that in March 2013, on at least two occasions, they were served mashed potatoes with large chunks of raw potatoes in them, and in a different section of the Jail, a rubber glove was found in a serving of biscuits and gravy. Plaintiffs seek compensatory and punitive damages for "negligence on behalf of Aramark Food Service, for refusal of potentially life saving preventative measures on behalf of Prime Care Medical, Inc., and [for] the failure of the Regional Jail Authority to insure inmate safety and health." (ECF No. 1 at 5). Plaintiffs also demand that the defendants be sternly reprimanded and penalized for their "serious infractions." (*Id.*).

On April 2, 2013, Plaintiffs filed a document entitled "Evidence Letter," which included an affidavit prepared by another inmate who had information regarding the rodent found in the mashed potatoes and the glove found in the biscuits and gravy. (ECF No. 7). According to the affidavit, inmate Tyrease McMillon was working in the Jail's kitchen in March 2013 and witnessed an inmate kitchen-worker place a glove on the tray of biscuits and gravy. McMillon further reported that inmates working in the kitchen "place[d] all kinds of things on the trays" because Aramark Food Service would not supply them with coffee and other food items. Finally, McMillon indicated that "if the jail [had given] the inmates something for [the] Super Bowl, the mouse would of not made it on the tray." (*Id.* at 2).

## II.    <u>Standard of Review</u>

Under the provisions of 28 U.S.C. § 1915(e)(2)(B), a court must screen each case in which a person seeks to proceed *in forma pauperis* and must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A complaint fails to state a claim when, accepting the plaintiff's well-pled allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Consequently, the complaint must include "facts sufficient to state all the elements of [the plaintiff's] claim." *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003).

In the context of a *pro se* complaint, such as the one filed in this civil action, the court must liberally construe the allegations. *Erickson v. Pardus,* 551 U.S. 89, 94 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint must contain sufficient factual allegations to support a cause of action that is cognizable in federal court. *Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The court may not rewrite the complaint to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

4

III.  **Discussion**

Plaintiffs seek monetary relief under 42 U.S.C. § 1983.  42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." To state a cause of action under § 1983, a plaintiff must allege facts showing that: (1) an official deprived the plaintiff of a federally protected civil right, privilege or immunity and (2) that the official did so under color of State law. 42 U.S.C. § 1983; *see also Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792 (D.S.C. Sept. 8, 2010). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, for an official to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (*quoting Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D.Md. 1971).

Plaintiffs claim that the Defendants[1] subjected them to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution by (1) failing to serve sanitary meals and (2) failing to provide preventative medical care. The Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to

---

[1] Plaintiffs' complaint does not indicate whether they intend to sue Defendants in their official or individual capacities. The determination of whether a defendant has been named in his official or individual capacity is generally determined by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998). "When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). In this case, the issue of capacity is not significant given that Plaintiffs fail to allege facts that rise to the level of a constitutional violation.

guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (*citing Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). However, "[p]rison conditions may be 'restrictive and even harsh.'" *Farmer*, 511 U.S at 833 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) ("To the extent that [prison] conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). Nevertheless, not every uncomfortable condition of confinement is actionable. *Rhodes,* 452 U.S. at 347. Ultimately, this prohibition "does not mandate comfortable prisons, and only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (*quoting Rhodes,* 452 U.S. at 347).

In order for Plaintiffs to state a plausible claim under the Eighth Amendment, they must show both (1) "a deprivation suffered or injury inflicted" that was "sufficiently serious," when measured by an objective standard (objective component), and (2) that the responsible prison officials had a "sufficiently culpable state of mind" (subjective component). *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (*quoting Wilson,* 501 at 298-300). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'" *Iko*, 535 F.3d at 238.

The objective component of an Eighth Amendment claim is satisfied by a

showing that the challenged conditions caused or constituted an extreme deprivation of a basic human need. *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "[T]o demonstrate such an extreme deprivation, [Plaintiffs] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [their] exposure to the challenged conditions." *Odom v. South Carolina Dept. of Corrections*, 349 F.3d 765, 770 (4th Cir. 2003) (*quoting De'Lonta*, 330 F.3d at 634); *see also Stickler*, 989 F.2d at 1380 ("[F]or prison conditions to rise to the level of unconstitutional punishment, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition."). "Compelling a showing of significant physical or emotional harm, or a grave risk of such harm, infuses an element of objectivity into the analysis, lest resolution of the seriousness of the deprivation devolve into an application of the subjective views of the judges deciding the question." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citing *Strickler*, 989 F.2d 1375, 1379–80 (4th Cir. 1993)).

To fulfill the subjective component, Plaintiffs must demonstrate a "deliberate indifference" to their health or safety by the Defendants. *Farmer*, 511 U.S. at 834 *quoting Wilson*, 501 U.S. at 297). The Supreme Court of the United States has explained:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Deliberate indifference is more than mere negligence but less than malice. *Estelle v. Gamble*, 492 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Put simply, if the Defendants here were aware of an excessive risk of harm to Plaintiffs' health or safety and disregarded it, Defendants had a sufficiently culpable state of mind. *See Wilson*, 501 U.S. at 303; *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010).

### A.     Food Issues

"It is well established that inmates must be provided nutritionally adequate food prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it," *Shrader v. White,* 761 F.2d 975, 986 (4th Cir. 1985) (*citing Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir. 1980)). Thus, "[a]llegations of inadequate food for human nutritional needs or unsanitary food service facilities are sufficient to state a cognizable constitutional claim so long as the deprivation is serious and the defendant is deliberately indifferent to the need." *King v. Lewis*, 358 F. App'x. 459, 460 (4th Cir. Dec. 31, 2009) (unpublished) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Bolding v. Holshouser*, 575 F.2d 461 (4th Cir. 1978)).

However, in this case, Plaintiffs are unable to satisfy either component of an Eighth Amendment claim. First, while the presence of a dead rodent in Plaintiffs' food is revolting, this incident does not objectively constitute a denial of the "minimal civilized measure of life's necessities." Moreover, Plaintiffs do not allege chronic problems with their food, nor do they claim serious medical and emotional deterioration attributable to the challenged condition. "If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Strickler,* 989 F.2d at 1381. "Occasional short-lived problems with food

service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment." *Marshall v. Bazzle,* C/A No. 4:08-cv-2775-GRA, 2009 WL 2858999, at *6 (D.S.C. Aug. 27, 2009) (Prisoner's claims that he bit into a raw chicken heart buried in his dinner of chicken livers and, on another occasion chewed on glass found in his food, were not cognizable under the Eighth Amendment); *see also Reed v. Olson,* Case No. 4:09-3126-JFA-TER, 2011 WL 765559, at *3 (D.S.C. Feb. 24, 2011) ("The fact that the food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation.") (*quoting Hamm v. Dekalb County*, 774 F.2d 1567 (11th Cir. 1985)); *Allen v. Maryland,* Case No. L-10-353, 2010 WL 727753, at *1 (D.Md. Feb. 25, 2010) (Although prisoner found a burnt rodent in his breakfast, he failed to state an Eighth Amendment claim because he did not allege that his food "regularly or even often contains mice or other foreign objects."); *Lunsford v. Reynolds,* 376 F.Supp 526, 528 (W.D.Va. 1974) ("Occasional incidents of foreign objects contained in food, while regrettable, does not present a question of constitutional proportion."); *Fountain v. Shaw,* No. 10-c-1484, 2011 WL 4888874, at *5 (N.D.Ill. Oct. 13, 2011) (A dead mouse on prisoner's food tray was "insufficient to establish an Eighth Amendment violation."); *Richardson v. Jones,* Case No. 1:10-cv-01015, 2011 WL 31533, at *6 (W.D. Ark. Jan. 5, 2011) (Isolated instances of finding bugs in the food are not claims of constitutional dimension); *Smith-Bey v. CCA/CTF,* 703 F.Supp.2d 1, 8, (D.D.C. 2010) ("[T]wo instances of discovering cockroaches in one's food do not rise to the level of sufficiently serious deprivation" under the Eighth Amendment.); *Speech v. Ward,* No. S-05-1403 FCD DAD P, 2006 WL 2849822, at *2 (E.D. Cal. Oct. 4, 2006) (Single instance of being served a meal contaminated with maggots was not a constitutional violation even

though prisoner had heard rumors about others finding roaches and worms in the prison's cereal); *Boulware v. Hill,* No. CIV.A. 98-3876, 2000 WL 1593989 (E.D.Pa. Oct. 24, 2000) ("One instance of a prisoner biting into a mouse contained in his lunch does not constitute a denial of the 'minimal civilized measure of life's necessities.'").

Second, Plaintiffs have not established that any of the named Defendants knew that the mashed potatoes were contaminated and served them anyway. To the contrary, the affidavit supplied by Plaintiffs states that an inmate surreptitiously slipped a dead mouse onto Wassil's food tray to punish the Jail for not preparing something special for the inmates on Super Bowl Sunday. Indeed, the facts before the Court indicate that the dead rodent was not in the raw potatoes used in the kitchen to make the meal, was not introduced into the mashed potatoes during food preparation, and was not in the pot of mashed potatoes or in any other inmate's food; thus, Defendants had no reason to suspect that the potatoes being served posed a significant risk to the health of the inmates. Although Plaintiffs complain that Aramark Food Service was negligent in its supervision of the inmates working on the food service line, thus allowing them the opportunity to place contaminants on food trays, negligence is not the same as a deliberate indifference to the health and safety of the inmates. Therefore, the undersigned **FINDS** that Plaintiffs have not alleged facts sufficient to state an Eighth Amendment claim.

### B.    *Medical Care*

To show an Eighth Amendment violation based on the denial of medical care, Plaintiffs must demonstrate that they had an objectively serious medical need, *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and the Defendants were deliberately indifferent to that need. *Farmer,* 511 U.S. at 837. A "serious medical need"

is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko,* 535 F.3d at 241 (*citing Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)). A serious medical need may also be evidenced by the presence of a medical condition that significantly affects the prisoner's daily activities or causes chronic and significant pain. *McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). "It requires proof that the prison official knew of or was aware of the inmate's need for medical attention and disregarded an excessive risk to the inmate's health or safety." *Johnson v. Maynard,* ELH-12-2692, 2013 WL 4176958 (D.Md. Aug. 12, 2013) (*citing Farmer,* 511 U.S. at 837). Nevertheless, an inmate is not entitled to unqualified access to health care, and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). Furthermore, a prisoner is not constitutionally entitled to receive the treatment of his choice. *Jackson v. Fair,* 846 F.2d 811, 817 (1st Cir. 1988). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985).

According to the complaint, none of the Plaintiffs actually ate the rodent, and none of the Plaintiffs became ill after eating the mashed potatoes. Plaintiffs do not allege a physical injury from exposure to the rodent, nor claim to have displayed any signs or symptoms of a serious medical condition that required prompt attention. While it is true that rodents can carry diseases, Plaintiffs make no claim that the rodent in this case was

11

diseased. "[S]ubjective fear that the mouse might have carried disease is entirely speculative and unsubstantiated" and does not meet the objective component of an Eighth Amendment claim. *Fountain,* 2011 WL 4888874, at *6. Therefore, when considering the facts in the light most favorable to Plaintiffs, they fail to state a constitutional violation. The Jail may indeed have denied Plaintiffs diagnostic blood work and prophylactic care, but at the same time, Plaintiffs did not suffer from a serious medical need. If there was no serious medical need, then Defendants cannot be said to have deliberately ignored a substantial risk of danger to Plaintiffs' health.

Moreover, in the absence of a physical injury, Plaintiffs are precluded by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), from seeking damages for emotional distress. The PLRA expressly prohibits the filing of civil actions by prisoners "confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* Although the PLRA does not define "physical injury," courts have held that the "physical injury" referenced by the Act need not be significant, but must be more than *de minimis. See, e.g., Flanory v. Bonn,* 604 F.3d 249, 254 (6th Cir. 2010); *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir. 2002); *Siglar v. Hightower,* 112 F.3d 191, 193-94 (5th Cir. 1997); *Zehner v. Trigg,* 952 F.Supp. 1318, 1328 (S.D. Ind. 1997); *Starr v. Smith,* Case No. 5:13-cv-01244-RBH, 2013 WL 4021167 (D.S.C. Aug. 6, 2013). In addition, "[a] plaintiff seeking compensatory damages for emotional distress cannot rely on 'conclusory statements that the plaintiff suffered emotional distress [or] the mere fact that a constitutional violation occurred,' but, rather, 'the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated.'" *Knussman v. Maryland*, 272 F.3d 625,

640 (4th Cir. 2001), *quoting Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996) (internal quotation marks omitted).

Here, Plaintiffs' factual allegations do not indicate the existence of an objectively serious medical need. In the absence of a concrete and substantial risk of harm to Plaintiffs, preventative medical assessment and treatment simply are not mandated by the Constitution. Therefore, the undersigned **FINDS** that Plaintiffs' complaint fails to state a claim under 42 U.S.C. § 1983.

## IV.   <u>**Proposal and Recommendations**</u>

Based on the foregoing findings, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that that the presiding District Judge **DENY** the application of Plaintiff, Charles Wassil, to proceed *in forma pauperis* (ECF No. 4)*,* **DENY** his Motion for Appointment of Counsel, (ECF No. 8), **DENY** Plaintiffs' Motion to Amend the Complaint to substitute Larry Crawford as a defendant in place of Ronald Casto, (ECF No. 9), **DISMISS** the complaint, with prejudice, (ECF No. 1), and remove this matter from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of

such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn,* 474 U.S. 140 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiffs and Defendants.

**DATED**:  August 20, 2013.


Cheryl A. Eifert
United States Magistrate Judge