IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHARLES WASSIL;
STEVEN RHODES;
JOSHUA BELCHER;
QUENTON SHEFFIELD,

      Plaintiffs,

v.                                                                      CIVIL ACTION  NO. 3:13-06020

RONALD B. CASTO, Interim Administrator,
Western Regional Jail; MISTY BENNETT,
Prime Care Medical Inc. Admin;
BRADLEY BYRD, Aramark Food Service Director,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs' Objections (ECF No. 13) to the Magistrate's Proposed Findings and Recommendations (ECF No. 12). For the reasons stated below, Plaintiffs' Objections (ECF No. 13) are **DENIED**, and the Magistrate's Proposed Findings and Recommendations (ECF No. 12) are **ADOPTED in full**. The Court accordingly **DISMISSES** the Complaint with prejudice (ECF No. 1). Furthermore, the Court **DENIES** Plaintiff Charles Wassil's application to proceed *in forma pauperis* (ECF No. 4), Motion for Appointment of Counsel (ECF No. 8), and Motion to Amend the Complaint to substitute Larry Crawford as a defendant in place of Ronald Casto (ECF No. 9). This matter is hereby removed from the docket of this Court.

## I. Statement of Facts

On February 4, 2013, Plaintiff Charles Wassil—at that time an inmate at Western Regional Jail ("WRJ")—was eating dinner with Plaintiffs and fellow inmates Steven Rhodes, Joshua Belcher, and Quenton Sheffield. While eating his mashed potatoes, Mr. Wassil discovered a dead rodent in the mashed potatoes on this tray. He showed the other inmates and notified a corrections officer. A second corrections officer was called, who took the tray of food. Pictures were taken and administrators wrote a report about the incident. Mr. Wassil promptly filed a grievance with WRJ administrator Michael Clark about the dead rat.

On February 6, 2013, Mr. Wassil met with WRJ administrators Ronald Casto and Henry Robinson, Jr., who informed Mr. Wassil that rat poison had been laid to solve the problem. Mr. Wassil told them that laying rat poison did not sufficiently rectify his grievance, noting that his two requests for preventative bloodwork following the rat incident had been denied. Mr. Wassil wanted bloodwork to be performed to determine if he had contracted a disease from the rat. Mr. Wassil also told the two administrators that corrections officers had mocked the inmates about the rat incident. Mr. Casto told Mr. Wassil to make a third request for bloodwork, which Mr. Wassil did; however, no bloodwork was completed, and Mr. Wassil sent a grievance to medical administrator Misty Bennett which went unanswered.

Mr. Casto returned the original grievance on February 7, 2013, stating that nothing more could be done. Mr. Wassil filed an appeal that same day; that appeal was later denied, noting that Mr. Casto "explained to [Mr. Wassil] the steps taken to prevent another such occurrence." Letter from Paul O'Dell, Feb. 20, 2013, ECF No. 13-1 at 7. Mr. Wassil filed a second appeal, which was also denied.

On March 17, 2013, a used rubber glove was found with the biscuits served to inmates. At lunch that same day, a chunk of raw potato the size of a baseball was served with the mashed potatoes. Mr. Casto was notified of this second mashed potato incident. On March 19, 2013, another baseball-sized raw potato was found in the mashed potatoes during lunch. Mr. Casto was shown the potato. According to Plaintiffs, jail administrators and kitchen staff "swear that raw food cannot come from the kitchen because they 'cook and mash' the food expertly." Compl. 11, ECF No. 1.

Plaintiffs, under the lead of Mr. Wassil, filed the pending pro se Complaint. Mr. Wassil subsequently filed an application to proceed *in forma pauperis*, ECF No. 4, a Motion for Appointment of Counsel, ECF No. 8, and a Motion to Amend the Complaint to substitute WRJ administrator Larry Crawford as a defendant in place of interim administrator Ronald Casto, ECF No. 9. Mr. Wassil also filed an evidence letter, in which inmate Tyrease McMillon, who worked in the jail's kitchen in March 2013, revealed details about the kitchen's operations. ECF No. 7. Mr. McMillon said he saw inmates "place all kinds of things on trays," including placing a plastic glove on the tray of biscuits and gravy on March 17, 2013. *Id.* He said the inmates who work in the kitchen are not properly monitored and engage in problematic behavior because they are not given coffee and hot sauce. Also, he stated that the mouse would not have been placed on the tray if the jail had given the inmates "something" in celebration of the Super Bowl. *Id.*

On August 20, 2013, Magistrate Judge Cheryl A. Eifert issued Proposed Findings and Recommendations ("PF&R") in this matter, recommending that this Court dismiss the Complaint and deny the three pending motions. ECF No. 12. Mr. Wassil timely filed Objections on behalf of all Plaintiffs. ECF No. 8. The Objections describe additional food incidents in the jail and refute the Magistrate's conclusions. According to the Objections, on February 28, 2013, an

3

inmate broke his tooth on a rock in the potatoes. On March 17, 2013, an earthworm was found in the potatoes. On April 22, 2013, an inmate received a whole tray of rotten potatoes. On June 10, 2013, four hairs were found in some macaroni and cheese.

Section II discusses the standard of review applicable to the PF&R. Section III addresses the legal standard for civil rights claims, in particular claims for violation of the Eighth Amendment. Section IV examines Plaintiffs' objections regarding food service at WRJ. Section V discusses objections regarding medical treatment. Lastly, Section VI addresses other miscellaneous objections.

## II. Standard of Review

This Court's review of the Magistrate's proposed findings and recommendations to which Plaintiffs object is de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."). Therefore, this Court will review de novo the Magistrate's determination that neither the food services issues at WRJ nor the alleged deprivation of medical treatment amount to a Constitutional violation and that Plaintiffs therefore have not stated a claim for relief.

A complaint must be dismissed if it fails to state a claim upon which relief may be granted. When determining if a complaint fails to state a claim, the court accepts the factual allegations in the complaint as true, even when doubtful, and draws all reasonable inferences therefrom. As explained by the United States Supreme Court, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Special considerations arise when a case involves pro se pleadings, as is the case here. A court must construe pro se filings liberally, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. 97, 106 (1976)). In construing pro se filings liberally, however, the court must be careful not to "rewrite a petition to include claims that were never presented." *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998). Also, the court need not "conjure up questions never squarely presented to" it. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. Legal Standard for Eighth Amendment Claims

Plaintiffs are seeking relief pursuant to 42 U.S.C. § 1983, which states in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

*Id.* In order to succeed, Plaintiffs must show that "the official[s] charged acted personally in the deprivation of the plaintiffs' rights. The doctrine of respondeat superior has no application under this section." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971)).

Although Plaintiffs do not specify which Constitutional rights form the basis of their claims, their claims are most accurately viewed as falling within the Eighth Amendment, a

5

finding which Plaintiffs did not dispute. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (noting that prison conditions and inmate treatment must be assessed under the Eighth Amendment). The Eighth Amendment prohibits the infliction of cruel and unusual punishments. In addition to restraining the physical actions of prison officials, the Eighth Amendment "also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). To show a violation of the Eighth Amendment, two elements must be established: 1) "the prison official acted with a sufficiently culpable state of mind (subjective component)" and 2) "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996)). As explained by the Fourth Circuit, "[t]hese requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.*

In order to meet the subjective component—that the official had a sufficiently culpable state of mind—the official must have demonstrated "deliberate indifference." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citing *Farmer*, 511 U.S. at 825). Deliberate indifference means that the "prison official actually kn[e]w of and disregard[ed] an objectively serious condition, medical need, or risk of harm." *Id.* Additionally, "deliberate indifference entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmers*, 511 U.S. at 835.

To meet the objective component regarding deprivation or injury, the inmate must have suffered an "extreme deprivation." *De'Lonta*, 330 F.3d at 634. An extreme deprivation is "a serious or significant physical or emotional injury resulting from the challenged conditions, or . . . a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (citations omitted) (internal quotation marks omitted).

## IV. Food Service Issues

As noted in the PF&R, "[a]llegations of inadequate food for human nutritional needs or unsanitary food service facilities are sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need." *King v. Lewis*, 358 F. App'x 459, 460 (4th Cir. 2009) (citing *Bolding v. Holshouser,* 575 F.2d 461 (4th Cir. 1978), and *Wilson v. Seiter,* 501 U.S. 294 (1991)); *see also Shrader v. White,* 761 F.2d 975 (4th Cir. 1985) ("It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." (citation omitted) (internal quotation marks omitted)). Furthermore, "[a]lthough the Eighth Amendment requires prisons to provide inmates with wholesome and nutritious meals, an inmate must allege a serious injury arising from the provision of inadequate food to state an Eighth Amendment violation." *Williams v. Washington*, No. 1:12-cv-1129 TSE TRJ, 2013 WL 4399796, at *3 (E.D. Va. Aug. 14, 2013).

The presence of foreign objects in one's food—particularly a dead rat—is sickening. However, the Court finds that the occasional presence of foreign objections within inmates' food does not constitute a violation of inmates' Eighth Amendment rights. This finding remains the same even taking into account the additional items noted in the Objections. The items do not pose an immediate and substantial danger to inmates. Plaintiffs object to the Magistrate's finding

that there is not a chronic problem with the food, but the Court rejects that objection. Although the line between "chronic" and "occasional" problems is somewhat ambiguous, the Court does not believe that Plaintiffs have alleged food service issues sufficient in frequency or severity to violate the Eighth Amendment. This is because "occasional incidents of a foreign object contained in food, while regrettable, does [sic] not present a question of constitutional proportion." *Lunsford v. Reynolds*, 376 F. Supp. 526, 528 (W.D. Va. 1974) (allegations of bugs in food failed to state an Eighth Amendment violation); *see also Hamm v. DeKalb County,* 774 F.2d 1567, 1572 (11th Cir. 1985) (noting that prisoners are entitled to reasonably adequate food); *Gardner v. Devenyns*, No. CIV.A. JKB-11-2725, 2012 WL 706850 (D. Md. Mar. 2, 2012) (inmate being repeatedly served spoiled milk was not a constitutional violation), *aff'd*, 474 F. App'x 378 (4th Cir. 2012); *Reed v. Olson*, No. 4:09-CV-3126-JFA-TER, 2011 WL 765559, at *3-4 (D.S.C. Jan. 19, 2011) (no Eighth Amendment violation where inmate alleged "that the food is often contaminated with hair, rocks, various pieces of steal [sic] particles, and bugs, both alive and dead"); *Richardson v. Jones*, No. 1:10-CV-01015, 2011 WL 31533, at *6 (W.D. Ark. Jan. 5, 2011) (a few instances of bugs in food were insufficient to show Eighth Amendment violation); *Marshall v. Bazzle*, No. CA 4:08-CV-2775-GRA, 2009 WL 2858999, at *6 (D.S.C. Aug. 27, 2009) (where inmate bit into raw chicken heart amongst serving of chicken livers and found broken glass in his rice, finding that "[o]ccasional short-lived problems with food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment"). Taking Plaintiffs' allegations as true, the alleged incidents of foreign objections in the food reveal only isolated instances of contamination being found by individual inmates, not pervasive or persistent contamination.

Plaintiffs' Objections cite additional cases to show that the unsanitary food conditions here rise to the level of being a constitutional violation. The cases cited by Plaintiff for this proposition, however, are distinguishable from the facts of this case, as they involve conditions much more severe than those at hand here. For example, the Second Circuit held in *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002), that the plaintiff inmate had sufficiently alleged a violation of the Eighth Amendment where he described being placed on a "restricted diet" of raw cabbage and a bread-like vegetable loaf for two weeks, resulting in him losing over 30 pounds and experiencing severe abdominal pain and emotional distress. *See also Ramos v. Lamm*, 639 F.2d 559, 570-72 (10th Cir. 1980) (the Tenth Circuit finding that a prison's kitchen conditions and food service were constitutionally inadequate where the kitchen had leaks, rotten food on the floor, moldy coolers, poor ventilation, and "extensive" rodent and insect infestation, among other problems); *Wilson v. Vannatta*, 291 F. Supp. 2d 811 (N.D. Ind. 2003) (plaintiff inmate sufficiently pled an Eighth Amendment violation based on deprivation of food where he alleged being given rotten food and reduced rations, causing him to lose 25 pounds and experience stomach pain and headaches); *Drake v. Velasco*, 207 F. Supp. 2d 809, 811 (N.D. Ill. 2002) (plaintiff inmate sufficiently alleged a constitutional violation where he noted "unsanitary conditions, including serving meals on trays containing spoiled food from previous meals and inadequate supervision of employees, which results in improper handling, preparation and sterilization of equipment," which he claimed impaired his "ability to recover from his illnesses and have caused an immediate and substantial risk to his health").

Plaintiffs have also failed to sufficiently allege that Defendants acted with deliberate indifference, that is, that they knew of and disregarded an objectively serious risk to inmates. Administrators were alerted to the rat found in the mashed potatoes and they met promptly with

Mr. Wassil just days afterward to discuss the incident and explain the measures they had taken to prevent the harm from repeating. This does not demonstrate deliberate indifference, but the opposite—that officials attempted to promptly take remedial action. Even if Defendants were aware of all the other foreign objects found in the food—the rock, earthworm, rotten potatoes, glove, and hairs—those objects would not present an objectively serious risk to the health of inmates. Lastly, although the evidence letter states that inmates intentionally put foreign objects in the food, Plaintiffs never allege that officials know that this is the cause of at least some of the problems. Without knowledge, officials cannot be expected to address it.

The Objections also argue that the jail failed to properly spray to prevent pest problems on a yearly basis, which allegedly shows Defendants' deliberate indifference. However, prison officials promptly decided to lay rat poison once they learned of the rat in the mashed potatoes. The Court does not believe that the decision not a spray sooner presented a serious risk to inmates. Therefore, deliberate indifference has not been shown. Plaintiffs cite multiple cases in an effort to show that Defendants acted with deliberate indifference, but those cases are distinguishable or unhelpful on this point. *See, e.g., Gates v. Cook*, 376 F.3d 323, 340 (5th Cir. 2004) (holding that the trial court's finding that that there was an extreme risk of heat-related illness for inmates and that administrators showed deliberate indifference was not clearly erroneous, "based on the open and obvious nature of these conditions and the evidence that inmates had complained of symptoms of heat-related illness."). Also, this is not a case where the officials engaged in "patently ineffectively gestures." *Coleman v. Wilson*, 912 F. Supp. 1282, 1319 (E.D. Cal. 1995).

Having found that the allegations concerning food do not constitute an Eighth Amendment violation, the Court need not discuss Defendants' alleged responsibility or

involvement regarding food service. Plaintiffs also object to the Magistrate's characterization of how the dead rat arrived in the mashed potatoes, arguing that "[a]ny tray that was on that cart can pose a significant risk to the health of the inmates." Objections 3. They also allege that foreign objects appearing in the food "happens all the time," but that nobody does anything to stop it and that officials try to cover this up. *Id.* For the reasons explained above, however, the allegations are insufficient to state a claim for an Eighth Amendment violation.

### V.     Medical Treatment

In order to establish an Eighth Amendment violation regarding medical treatment, "[t]he plaintiff must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Iko*, 535 F.3d at 241 (quoting *Estelle*, 429 U.S. at 104). "[A] 'serious . . . medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)). The Objections argue that the jail's refusal to complete bloodwork, to respond to the medical grievance, and to check on inmates' health following these food incidents illustrates deliberate indifference. However, taking the Complaint's allegations as true, the Court nonetheless finds that Plaintiffs have not sufficiently alleged a constitutional violation because Plaintiffs have not presented a "serious medical need." The Objections rhetorically ask how the Court can "determine if serious or significant physical or mental injury [occurred], without proper medical care?" Objections 2. This argument, however, ignores that a doctor's diagnosis is not required; alternatively, a serious medical need exists if there is a need for medical attention which is so obvious that a lay person would easily recognize it. Plaintiff does not allege becoming ill or having any other physical symptoms resulting from exposure to the food. It is

11

therefore not "obvious" that Mr. Wassil should be allowed to see a doctor. No physician has diagnosed a need for medical treatment based on exposure to the rat or other items in the food.

In the Objections, Mr. Wassil explains that he has dreams about the rat incident and that he "cannot eat much of the food because [he does] not feel the food is 100% sanitary" and because "nothing about this have [sic] been done." Objections 2. However, he cannot recover on the basis on any alleged emotional injury without allegations of physical injury. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ."). Therefore, his allegations of emotional injury cannot suffice to show a serious medical need here. Without a serious medical need, Plaintiffs' claims regarding medical treatment must be dismissed.

## VI. Miscellaneous Objections

The Objections note that the area in which the inmates eat is a dayroom, not a dining hall, as the PF&R refer to it; this mislabeling of the room does not affect the outcome of this case. Plaintiffs also take issue with the fact that the pictures of the offending rat and the subsequent report by prison officials were not discussed in the PF&R nor requested by the Court. The pictures and report are not necessary in order to reach a properly-informed conclusion in this matter. Neither is it necessary for the Court to view the many affidavits collected by Plaintiffs. The Objections also include an unclear statement about suing Defendants in their individual and/or official capacities. Because the Complaint is dismissed on other grounds, the Court need not attempt to decipher the statement.

## VII. Conclusion

For the reasons explained above, Plaintiffs' Objections (ECF No. 13) are **DENIED**, and the Magistrate's Proposed Findings and Recommendations (ECF No. 12) are **ADOPTED in full**.

The Court accordingly **DISMISSES** the Complaint with prejudice (ECF No. 1). Furthermore, the Court **DENIES** the application to proceed *in forma pauperis* (ECF No. 4), the Motion for Appointment of Counsel (ECF No. 8), and the Motion to Amend the Complaint to substitute Larry Crawford as a defendant in place of Ronald Casto (ECF No. 9). This matter is hereby removed from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:      March 12, 2014

        _____
        ROBERT C. CHAMBERS, CHIEF JUDGE